UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

UNITED STATES OF AMERICA,

        Plaintiff,

v.

CHRISTOPHER BRATTAIN,

        Defendant.
_____/

Case No. 1:06-CR-293-01

Hon. Robert Holmes Bell
Chief U.S. District Judge

## SENTENCING MEMORANDUM

Defendant Christopher Brattain, through his attorney Ray Kent and the Office of the Federal Public Defender, respectfully submits this Sentencing Memorandum for the Court's consideration on sentencing.

### BACKGROUND

On August 9, 2006, a two-count indictment was filed against Mr. Brattain in the U.S. District Court for the Northern District of Texas, charging Mr. Brattain with aggravated sexual abuse of a minor and abusive sexual contact, in violation of 18 U.S.C. Sections 2241(c) and 2244. Mr. Brattain, who was living in Michigan with his mother, was arrested and taken into custody on September 21, 2006.

A Consent to Transfer of Case for Plea and Sentence was filed in this District on November 30, 2006. A Rule 5 hearing was subsequently held. Mr. Brattain pleaded guilty to the first count of the indictment before U.S. Magistrate Judge Ellen S. Carmody on January 8, 2007.

The Court ordered a presentence investigation. The Presentence Investigation Report ("PSIR") was disclosed on February 28, 2007. The presentence investigator scored the Total Offense at Level 36. After a three-level reduction for acceptance of responsibility, this scoring would have resulted in a Guideline range of 135-168 months. On March 7, 2007, the Government objected – advocating a five-level increase, resulting in a sentencing range of 235-293 months. A week later, Mr. Brattain disclosed his objections, opposing the Government's five-level increase and objecting to a two-level care, custody or control increase assessed by the presentence investigator. Both objections remain unresolved.

## DISCUSSION

A.   Formulation of a Reasonable Sentence

In light of *United States v. Booker*, 543 U.S. 220 (2005), a sentencing court must impose a sentence that is "sufficient but not greater than necessary" to achieve the purposes of sentencing set forth in 18 U.S.C. Section 3553(a)(2). In determining what sentence is "sufficient but not greater than necessary," the Court must consider not only the purposes of sentencing identified by Congress in Section 3553(a)(2), but all the factors set forth in Section 3553(a).

B.   The 3553(a) Factors

1(a).   The Nature and Circumstances of the Offense

Over a period of years, Mr. Brattain repeatedly molested one of his three young children. There is no evidence that he molested the other two children or that he ever acted in a sexually inappropriate manner toward any other child or person.

### 1(b). The History and Characteristics of the Defendant

Mr. Brattain is 32 years old. Prior to this case, he had never been accused of a crime. He was a Boy Scout growing up and enjoyed helping older scouts with their Eagle Scout projects. He was a member of his school's band for eight years, playing the trombone through high school. He played in the jazz and marching bands and was selected for the All-District Band by his band director. He attended band camp in Texas and was a part of Band Champs, arranging music with that program. He did community service projects at his local mall during the holidays.

After high school, his desire to contribute and participate in his community continued to grow and he joined the military. He attended Tech School and became an F-111 and F-15 Avionics and Component Specialist. He won Air Force training ribbons, good conduct medals, and other awards, and was selected for the Air Force Leadership School, which he attended. He reached the rank of Staff Sargent, E-5. He did a tour of duty in Saudi Arabia.

While in the military and after his honorable discharge after ten years of service, he looked to continuing his education, taking general education courses in psychology, government, and speech, among other subjects. He consistently earned good grades – Bs were common. He volunteered in the community, doing things like putting up drywall and siding for Habitat for Humanity. While in the military, he participated in "Silver Ropes," a church-based youth group that worked at the Air Force Academy, retirement homes, and other places where their services were needed. He continues his practice of religion, attending church every Sunday, even now while incarcerated.

Despite his accomplishments, Mr. Brattain has faced many struggles. Socially, he was often picked on and labeled – at first, by peers in school, and later, by other soldiers in the military. He

and another soldier were derisively labeled "Fric and Frac" immediately upon their arrival for processing in San Antonio. Finances were often a pressing issue for the Brattain family, and for an extended period of time, Mr. Brattain's in-laws lived with the family. Communication between Mr. Brattain and his ex-wife was often fractured, and his ex-wife also struggled in communicating with her own family. Mr. Brattain's weight was another issue. For quite a while, the family could not afford childcare, so taking care of the children was a struggle. Mr. Brattain's ex wife was also stationed in Korea for an extended period, far from the family. There was talk of divorce. Then, Mr. Brattain's grandfather died, leaving Mr. Brattain with a terrible feeling of loss – his grandfather had been like a father. These issues all pressed on Mr. Brattain, both before he began the behavior leading to his offense and after.

     Mr. Brattain is extremely sorry for and ashamed of what he did. He knows there is no excuse for these acts. He is most sorry for having hurt his daughter and the rest of his family. Mr. Brattain knows that there is something wrong with him and he desperately wants treatment to address his problem, so that one day he may be able to reestablish some sort of relationship with his children. He loves his family, and even now, he worries about them. He worries about their financial situation – his ex-wife is unemployed and now has another child from another relationship to provide for. She has had to go to Mr. Brattain's father for rent money. Mr. Brattain sends the children cards and is proud to hear of their accomplishments. One of the children just made the honor roll at school.

     The most important thing in Mr. Brattain's life was and is being a father. He wants to "get back on that." He knows he inflicted much pain on his daughter and family and regrets it deeply. He recognizes he needs help and will welcome any counseling that he can get. He wants to fix what is wrong with him. He wants to go back to supporting his family. He wants to make amends.

  2. <u>Need for the Sentence to Reflect the Seriousness of the Offense, to Promote Respect for the Law, and to Provide Just Punishment for the Offense</u>

A sentence within or below the corrected Guideline range as discussed in Section 6 below is more than adequate to reflect the seriousness of the offense and promote respect for the law. It is certain to be a much longer sentence than any Mr. Brattain would have received had he been prosecuted in state court.

By way of example, had Mr. Brattain been convicted in Michigan state court of the equivalent state offense of Criminal Sexual Conduct in the Second Degree, the statutory maximum sentence a state court could have imposed for this conduct is fifteen years in prison. CSC-2 is a Class C offense. With no prior convictions, Mr. Brattain would have fallen in Prior Record Variable level A. Even if he had scored Offense Variable level VI, the top of the range, his minimum sentence could have been no higher than 29 months.

These calculations are of course in no way binding on this Court. They do however, illustrate that a sentence at or below the corrected Guideline range is more than adequate to reflect this community's assessment of the seriousness of Mr. Brattain's offense, promote respect for the law, and provide just punishment.

  3. <u>Need for the Sentence to Afford Adequate Deterrence to Criminal Conduct</u>

Please refer to Section 4 below.

  4. <u>Need to Protect the Public From Further Crimes of the Defendant</u>

The public is not at risk of further crimes by Mr. Brattain.. Sex offenders generally pose a low risk of recidivism. Sex offenders who commit incest pose a particularly low risk. One study found that only 9% of sex offenders who committed incest re-offended. Center for Sex Offender Management, U.S. Dept. of Justice, *Myths and Facts About Sex Offenders*,

5

http://www.csom.org/pubs/mythsfacts.htm (Aug. 2000). Treatment and therapy appear to contribute significantly to combating recidivism. *Id.* In one study, basic sex-offender programming dropped recidivism rates to 7.1%, as compared to 15.5% without such programming. State of Ohio Dept. of Rehabilitation and Correction, *Ten-Year Recidivism Follow-Up of 1989 Sex Offender Releases* (April 2001). A Vermont Department of Corrections study showed a recidivism rate of 7.8% for those offenders who participated in treatment and a .5% rate for those who completed treatment. *Id.*

Sexual crimes, like other crimes, are often associated with antisocial personalities and outlooks and unstable lifestyles – "crime-prone personalities." R. Karl Hanson & Kelly Morton-Bourgon, *Predictors of Sexual Recidivism: An Updated Meta-Analysis*, PUBLIC SAFETY AND EMERGENCY PREPAREDNESS CANADA 1 (2004), http://ww2.ps-sp.gc.ca/publications/corrections/pdf/200402_e.pdf. Sexual offenders "tend to engage in a range of impulsive, reckless behaviour, such as excessive drinking, frequent moves, fights, and unsafe work practices." *Id.* Hostile and resentful attitudes are other marks of the "crime-prone personality." *Id.* Along with sexual deviancy and lifestyle instability, there seem to be three other characteristics prevalent in persistent sexual offenders: 1) negative family background, 2) problems with friends and lovers, and 3) attitudes tolerant of sexual assault. *Id.* at 2. These content areas appear to enjoy considerable credibility among those conducting sexual offender evaluations. *Id.*

Results analyzing general recidivism rates show that "the most consistent predictors [of general recidivism] were measures of antisocial personality, antisocial traits and history or [sic] rule violation." *Id.* at 13. Sexual recidivism was not an exception in this area and antisocial orientation, including antisocial personality, antisocial traits, and a history of rule violation, is significant for predictions regarding sexual recidivism. *Id.* at 9. However "[a]lthough a number of recidivism risk

6

factors have been identified, the relationships between any single risk factor and recidivism is small. Consequently, competent evaluations needs [sic] to consider a range of risk factors." R. Karl Hanson & Kelly E. Morton-Bourgon, *The Accuracy of Recidivism Risk Assessments for Sexual Offenders: A Meta-Analysis*, KEEPING CANADIANS SAFE 1 (2007), http://www.ps-sp.gc.ca/res/cor/rep/_fl/crp2007-01-en.pdf. Therefore, even sexual deviance does not mean an offender is a high risk for recidivism. *See id.* And deviant sexual interest is less prevalent in incest offenders than in extra-familial sex offenders/child molesters. R. Karl Hanson, *Age and Sexual Recidivism: A Comparison of Rapists and Child Molesters*, PUBLIC WORKS AND GOVERNMENT SERVICES CANADA (2001), http://ww2.ps-sp.gc.ca/publications/corrections/Age200101_e.asp. Age will impact recidivism as well – older offenders are far less likely to recidivate. *Id.* This low risk of recidivism is especially apparent in incest offenders, like Mr. Brattain who will be middle-aged upon release. *See id.*

Follow-up studies indicate that "most sexual offenders do not re-offend sexually [and] that first-time sexual offenders are significantly less likely to sexually re-offend than those with previous sexual convictions." Andrew J. R. Harris & R. Karl Hanson, *Sex Offender Recidivism: A Simple Question*, PUBLIC SAFETY AND EMERGENCY PREPAREDNESS CANADA (2004), http://ww2.ps-sp.gc.ca/publications/corrections/200403-2_e.asp. Incest offenders are likely to be at the lowest end of the recidivism scale with the lowest rates of recidivism. *Id.* "Girl-victim child molesters" are far less likely to recidivate, with recidivism rates less than half those of "boy-victim child molesters." *Id.* And those offenders who have not previously been convicted of sexual crimes recidivate about half as often as those with previous convictions. *Id.* These studies demonstrate that

7

the probability of recidivism in Mr. Brattain's case, especially given the characteristics of Mr. Brattain's offense and his desire for treatment, is very low.

Mr. Brattain does not fit the mold of a dangerous and repeat sexual offender and he has the personality and support to get beyond his offense. He is not anti-social and he has strived to support his family. He grew up in a relatively stable, supportive environment. He had a loving relationship with his maternal grandparents, who reared him in his early years. He has a good relationship with both his mother and his father, though there have been issues between him and his parents over the years and between him and his step-father – but nothing beyond what is to be expected between children and their parents. Mr. Brattain is not impulsive, nor is he drawn to excessive drinking or substance abuse. In the military, far from being a belligerent or unsafe soldier or worker, he was commended for good behavior. He is friendly and struggles to be reliable and open in his relationships. With these background and personality traits in mind, Mr. Brattain does not exhibit the qualities of an offender highly likely to recidivate.

The nature of Mr. Brattain's crime also makes it unlikely that Mr. Brattain will recidivate. Mr. Brattain only committed his offense with one of his daughters. This daughter will likely be a grown woman when Mr. Brattain is released from custody. Mr. Brattain never engaged in inappropriate behavior with his other children or with children not his own. These factors make it unlikely that Mr. Brattain will pose a risk to society upon his release.

> 5. <u>Need for the Sentence to Provide the Defendant with Needed Educational or Vocational Training, Medical Care or Other Correctional Treatment in the Most Effective Manner</u>

Mr. Brattain is not in need of educational or vocational training. He received excellent training in the military and has pursued his education diligently. He will take advantage of training

offered, but the Bureau of Prisons does not offer programs in which he could not otherwise participate.

As stated above, Mr. Brattain wants treatment to remedy his condition and intends to take full advantage of whatever treatment is available.

      6.     The Advisory Sentence Range Calculated Under the Federal Sentencing Guidelines

The presentence investigator calculates Mr. Brattain's final offense level as 38 and assigns Mr. Brattain to criminal history category I, resulting in a sentencing range of 235 to 293 months. Mr. Brattain objects to the two-level enhancement recommended in paragraph 34 of the PSIR and the five-level enhancement recommended in paragraph 42.

I.    Objection to Paragraph 34.

A two-level increase in Mr. Brattain's offense level pursuant to Section 2A3.1(b)(3)(A) is inappropriate because that section does not apply to natural parents - case law does not generally apply it to natural parents, examples of application do not include natural parents, federal laws treat natural parents differently, and the U.S. Sentencing Commission explicitly refers to natural parents when it intends to target them in an enhancement.

Section 2A3.1(b)(3)(A) provides for a two-level increase if the victim of the charged criminal sexual abuse was "in the custody, care, or supervisory control of the defendant." U.S. SENTENCING GUIDELINES MANUAL § 2A3.1(b)(3)(A) (2006). Application Note 1 of that section refers the reader to Application Note 4 of the Commentary to Section 3A1.2 for the definition of "custody or control." Subsection (B) of this latter application note defines "custody or control" to include "non-secure custody," namely "custody with no significant physical restraint" and gives as examples "work detail outside the security perimeter of the prison." U.S. SENTENCING GUIDELINES MANUAL § 3A1.2 cmt.

9

n.4(B) (2006). Application Note 3(A) to Section 2A3.1 also gives some guidance on the meaning of "care, custody, or supervisory control," advising that Section 2A3.1(b)(3) "is to be construed broadly and includes offenses involving a victim . . . entrusted to the defendant, whether temporarily or permanently." *It gives as examples of such trustees – teachers, day care providers, baby-sitters, and other temporary caretakers*.

From its very language and the way it has been applied, Section 2A3.1(b)(3)(A) clearly is meant to apply to persons other than a child's natural parents. The Sixth Circuit has not spoken on this issue. One must therefore turn to the leading cases from other circuits examining application of the enhancement. All of these cases involved defendants who were in relationships with the victims that were not relationships based on natural parentage. *See, e.g.*, *United States v. Balfany*, 965 F.2d 575, 585 (8th Cir. 1992) (man who lived with victim's mother and often cared for victim alone had custody of victim); *United States v. Blue*, 255 F.3d 609, 614-15 (8th Cir. 2001) (man who had relationship with victim's grandmother not entrusted with child); *United States v. Castro-Romero*, 964 F.2d 942, 944 (9th Cir. 1992) (defendant who lived with victim's mother and who was home alone with victim at times had care of victim); *United States v. Chasenah*, 23 F.3d 337, 338 (10th Cir. 1994) (victim's grandmother's husband, who was not related by blood to victim, had custody of the victim when all of the adults in the household were allowed to supervise the children); *United States v. Crane*, 965 F.2d 586, 587 (8th Cir. 1992) (man who lived with victim's mother and was alone with victim at times had care of victim); *United States v. Merritt*, 982 F.2d 305, 307 (8th Cir. 1992) (man who lived with victim's grandmother and was able to be alone with victim and picked victim up from the homes of relatives had care of victim); *United States v. Miller*, 293 F.3d 468, 472 (8th Cir. 2002) (man who lived with victim's mother intermittently for substantial period

10

of time and traveled alone with the children had care of the victim); *United States v. Voice*, 200 F.3d 584, 585 (8th Cir. 2000) (man who, along with his companion, was babysitting victim had custody or care of victim).    In none of these cases was the defendant a natural parent of the victim. The enhancement requires that the victim have been placed in the "custody, care, or supervisory control of the defendant." The question becomes: who would have placed the victim in the "custody, care, or supervisory control of the defendant." That answer in the vast majority of cases is the natural parent. Likewise when the Background section of the Section 2A3.1 Commentary speaks of the defendant being one "to whom the victim is entrusted," the reader would be reasonable in assuming that it was a natural parent that so entrusted the victim to the defendant. Of course, as the application note to Section 3A1.2 makes clear, the state may have done the entrusting, as in the case of a ward or prisoner. However, for young children, the natural parent is the logical choice in considering the other party whose trust, as the entruster, may have been breached.

      The examples of "care, custody, or supervisory control" given in the notes to Sections 2A3.1 and 3A1.2 reveal that the Sentencing Commission was targeting persons whose professions and social positions place them in positions of trust with parents and give them access to children. The examples include prison workers, teachers, day care providers, baby-sitters, and other temporary caretakers. Nowhere do these sections or commentaries mention natural parents. The other enhancements available under Section 2A3.1 also demonstrate that the Commission was not targeting parents when it drafted this section. There are enhancements available if the victim was held in a correctional facility, if the victim was abducted, if the defendant misrepresented their identity, and for the use of a computer service. It is difficult to imagine situations in which parents could or would be subject to such enhancements.

11

Cases relied upon by the Government are distinguishable. In *United States v. Bruguier*, 161 F.3d 1145, 1153 (8th Cir. 1998), the enhancement was applied to a father of a child. However, the defendant never objected to the application. *Id.* Had he objected and brought the issue to the court's attention, the situation may have been different. The same is true of *United States v. Boneshirt*, 86 Fed. App'x 218, 219 (8th 2003), and *United States v. Passi*, 62 F.3d 1278, 1280-81 (10th Cir. 1995) – the defendant fathers did not object to the enhancement based on care, custody, supervisory control. The enhancement was not the issue in those cases.

Parents are simply treated differently under the law than others. When the U.S. Sentencing Commission wants to reach parents, it says so expressly. In Section 2G1.3(b)(1)(A), the Commission provides for a two-level enhancement when "the defendant was a parent, relative, or legal guardian of the minor." U.S. SENTENCING GUIDELINES MANUAL § 2G1.3(b)(1)(A) (2006). This enhancement is enumerated separately from that provided for when "the minor was otherwise in the custody, care, or supervisory control of the defendant." U.S. SENTENCING GUIDELINES MANUAL § 2G1.3(b)(1)(B) (2006). Likewise, Section 2G2.1(b)(5) provides for a two-level enhancement "[i]f the defendant was a parent, relative, or legal guardian of the minor involved in the offense" and the same level of enhancement "if the minor was otherwise in the custody, care, or supervisory control of the defendant." U.S. SENTENCING GUIDELINES MANUAL § 2G2.1(b)(5) (2006).

When the Committee intends to target parents, it says so. It makes no mention of parents in Section 2A3.1(b)(3)(A), so it obviously did not intend to include parents in that potential enhancement.

II. <u>Objection to Paragraph 42.</u>

The Section 4B1.5(b)(1) sentencing enhancement does not apply in Mr. Brattain's case because that enhancement is aimed at deterring recidivism by repeat and dangerous sex offenders. Mr. Brattain is not such an offender and his risk of recidivism is low because he only abused one person, his minor daughter who will be an adult when he is released, and he did not engage in the elaborate scheming that characterizes the crimes of defendants who receive the enhancement.

Incest is a tragic and unfortunate fact of human existence. This observation is in no way intended to minimize the wrongfulness of incest or the harm caused to its victims. But incest between a parent and a child is simply not the kind of conduct that Congress intended to target in the PROTECT Act – which led to the adoption of U.S. Sentencing Guideline Section 4B1.5, or that the Sentencing Commission intended to address in drafting that Guideline.

Section 4B1.5(b)(1) provides for an increase in offense level if the defendant "engaged in a pattern of activity involving prohibited sexual conduct." U.S. SENTENCING GUIDELINES MANUAL § 4B1.5(b)(1) (2006). When the Sentencing Commission drafted Section 4B1.5 – the Repeat and Dangerous Sex Offender Against Minors Section – it did not have a defendant like Mr. Brattain in mind. The very title of the section evidences this fact. The section is aimed at repeat offenders and offenders who will continue to pose a threat to society if/when released from custody. This aim is clear from the intent of the Commission in drafting Chapter Four of the Guidelines. Chapter Four of the Guidelines, in which Section 4B1.5 is found, is aimed at incapacitating dangerous offenders, who would otherwise pose a serious risk of reoffending. Paul J. Hofer & Mark H. Allenbaugh, *The Reason Behind the Rules: Finding and Using the Philosophy of the Federal Sentencing Guidelines*, 40 AM. CRIM. L. REV. 19, 57 (2003).

The Commission meant to use the enhancements in sections like 4B1.5(b)(1) to impose longer sentences on those whom data showed could be dangerous to the public upon release. Case law affirms that crime control and the risk of recidivism motivated the Commission's drafting of Section 4B1.5. Cases in which courts have applied the enhancement involve defendants who have repeatedly engaged in sexual abuse of various victims and who are likely to recidivate. *See, e.g.*, *United States v. Brown*, 2006 U.S. App. LEXIS 27483, *24-*27 (6th Cir. 2006) (unpublished) (defendant had sexually abused his two step-granddaughters and participated in the sexual abuse of a toddler via the internet); *Cramer*, 414 F.3d at 984-85, 987-88 (addressing issues of recidivism while applying Section 4B1.5(a) to defendant who had engaged in sexual acts with minor girl and had pictures of those acts and had previously raped a minor girl and violated the terms of his probation for that offense by continuing to engage in salacious activities); *United States v. Jones*, 440 F.3d 927, 928-29 (8th Cir. 2006) (defendant's sentence enhanced when he had sexually abused a girl at a party and his young cousin); *United States v. Phillips*, 431 F.3d 86, 88 (2nd Cir. 2005) (defendant had molested at least five children to whom he was related or whom he had met through the internet and babysitting); *United States v. Riccardi*, 405 F.3d 852, 857-59 (10th Cir. 2005) (upholding 4B1.5(1) enhancement when defendant had posed as athletic coach and made several sexually harassing phone calls to teenaged boys, had taken sexual pictures of boys, had sexually explicit pictures of minors on his computer, had "chatted" with boys on-line and asked them to "spank" themselves, and had picked up boys in the past and asked them to pose nude for photographs in exchange for money); *United States v. Schmeilski*, 408 F.3d 917, 918 (7th Cir. 2005) (defendant took pornographic pictures of his three minor stepdaughters and possessed over 1,500 images of child

pornography he had downloaded from the internet); *United States v. Von Loh*, 417 F.3d 710, 711-12 (7th Cir. 2005) (defendant sexually abused girl he met on the internet).

In all of these cases, the defendants' behavior indicated they would pose a threat to society when released from prison. All of these defendants except the one in *Von Loh* had abused multiple victims. All had abused non-relatives or victims to whom they were not related by blood. Most of these defendants had formulated fairly elaborate plans to effect their crimes. The defendant in *Von Loh* communicated with his victim for several months via the internet before meeting her. *Von Loh*, 417 F.3d at 712. He met with his victim on multiple occasions, driving from Madison, Wisconsin, to Schaumburg, Illinois, to pick the victim up and take her to local motels to engage in sex acts. *Id.* The defendants in *Phillips* and *Riccardi* had used the internet and other reference materials to find their victims and used material inducements to get their victims to perform sexual acts/pose in sexual manners. *See Phillips*, 431 F.3d at 88; *Riccardi*, 405 F.3d at 858-59.

Unlike the defendants in the cases cited above, to whom the Section 4B1.5 enhancement was applied, Mr. Brattain does not pose a similar threat to society. Unlike these other defendants, Mr. Brattain only abused one person – his eldest daughter. He did not abuse his other children or anyone else. He did not use the internet or other devices or reference materials to formulate a scheme to carry out his crime. Nor did he use material inducements or controlled substances. More importantly, his daughter will be a grown woman when Mr. Brattain is released from jail. Therefore, it is unlikely that Mr. Brattain will be a risk for recidivism after his release.

Psychological tests administered by agencies such as the Bureau of Prisons to determine the risk of recidivism in sex offenders confirm this assessment. These tests indicate that offenders who commit heterosexual incest, offenders like Mr. Brattain, are a low risk for reoffending. The Static-

99, Minnesota Sex Offender Screening Tool – Revised (MnSOST-R), and Rapid Risk Assessment for Sexual Offense Recidivism (RRASOR) are among these tests. The Static-99 test, with which a low point total indicates a low risk of recidivism, gives point values of 0 if the offender's victim was related to the offender, if the offender knew the victim, and if the victim was female (for male offenders). The MnSOST-R, which also uses a low scoring basis to indicate a low risk of recidivism, scores a point value of -1 if none of the offender's victims were strangers. This test also scores a point value of -1 if the offender will be over 31 years of age upon release, and Mr. Brattain is already over 31. The RRASOR, another test in which a low score indicates a low risk of reoffending, scores 0 points if the offender will be over 25 upon release, if the victim was a female (for male offenders), and if the victim was related to the offender. While such tests are not guaranteed predictions, they are fairly accurate for predicting recidivism. All would indicate that Mr. Brattain is a low recidivism risk.

Incest such as Mr. Brattain's conduct was is not the behavior at which this enhancement is aimed. Nor does Mr. Brattain's apparent viewing of animated child pornography make him a "repeat and dangerous sex offender" at whom the enhancement is aimed. The application notes to the enhancement make clear that child pornography offenses do not even fall within the purview of the enhancement. *See* U.S. SENTENCING GUIDELINES MANUAL § 4B1.5 cmt. n.2(A)(ii) and n.3(A)(ii) (2006) (excepting child pornography offenses from the definition of offenses that fall within the boundaries of the enhancement). The enhancement is aimed at those offenders who continue to violate the law in this area and need to remain incarcerated for the good of society. Mr. Brattain is not such an offender. Incest is a unique crime. Recidivism rates for this crime are low – among the lowest for any crime, sexual or otherwise. Recidivism will be especially unlikely given Mr.

Brattain's age and social circumstances. Given this low risk of Mr. Brattain re-offending and the intent of Section 4B1.5(b)(1), the enhancement is simply not necessary or appropriate in Mr. Brattain's case.

For the foregoing reasons, Mr. Brattain respectfully requests that this Court sustain his objections to paragraphs 34 and 42 of the PSIR and reduce his final offense level from 38 to 31.

7.  <u>The Need to Avoid Unwarranted Sentence Disparity Among Defendants with Similar Records who Have Been Found Guilty of Similar Conduct</u>

Please refer to Section 2 above.

8.  <u>The Need to Provide Restitution to Victims of the Offense</u>

Mr. Brattain wants to provide restitution to the fullest extent of his ability.

<u>CONCLUSION</u>

Defendant Christopher Brattain respectfully requests that the Court impose a sentence sufficient but not greater than necessary to satisfy the statutory purposes of sentencing discussed above.

                                                           Respectfully submitted,

                                                           <u>/s/ Ray Kent</u>
                                                           Federal Public Defender
                                                           The Trade Center
                                                           50 Louis NW, Suite 500
                                                           Grand Rapids, Michigan 49503
Dated: April 11, 2007                            (616) 742-7420